# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

SPARTA INSURANCE CO., a
Connecticut Corporation,

    Plaintiff,

v.

RICARDO CARRILLO; COPPER
SOLUTIONS AND SERVICES, LLC,
a business entity; CECILIO DURAN
MEDINA; GEORGE C. ALDERETE,

    Defendants.

No. 17-CV-604-BRB-KRS

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT WITHOUT PREJUDICE

    The issue presented in this declaratory judgment (diversity) action is to what extent does Plaintiff Sparta Insurance Company have an obligation to satisfy a $12,500,000 judgment entered in favor of Defendant Ricardo Carrrillo and against its insureds—Copper Solutions and Services, its executive director George Alderete, and its employee Cecilio Medina (collectively Copper Defendants)—in New Mexico state court. Now before this Court are the Copper Defendants' and Defendant Carrillo's respective motions (Docs. 18, 35) to dismiss or, alternatively, to stay this action pending the outcome of state court proceedings aimed at resolving the question of insurance coverage. For reasons stated herein, the motions are well

taken.  In a sound exercise of its discretion, the Court shall dismiss Sparta's complaint for declaratory judgment without prejudice pending adjudication of the insurance coverage issue in New Mexico state court.[1]

I.

On November 2, 2011, Defendant Medina was driving a commercial vehicle/ semi-truck with an attached trailer, both owned by Copper Solutions and insured by Sparta, on New Mexico Highway 259.  Medina rear ended a pickup truck in front of him, crossed the highway's centerline, and crashed head on into the semi-truck Defendant Carrillo was driving.  Carrillo sustained serious injuries and sued the Copper Defendants and others in New Mexico state court.  *Carrillo v. Copper Solutions & Services, LLC*, No. D-412-CV-201300509 (N.M. 4th Dist., San Miguel Co., filed December 30, 2013) (Carrillo action).  Plaintiff Sparta, the Copper Defendants' insurer, was not a named party to the Carrillo action.  Sparta, however, retained counsel to defend the claims against the Copper Defendants.

Notwithstanding this fact, Plaintiff Sparta, on May 13, 2014, filed a federal complaint for declaratory judgment against its insured Defendant Copper in the

---

[1] Sparta's filings in this case have tended to violate the District of New Mexico's local rules concerning the formatting of court documents.  Most recently, Sparta placed one and a half rather than two spaces between lines of text.  *See* Doc. 40; D.N.M. LR-Civ. 7.5.  Heretofore, Sparta shall strictly comply with the local rules.  The Court shall summarily reject any filing that fails to comply with the rules and, in the exercise of its discretion, may impose monetary sanctions for any such failure.

Northern District of Texas (tellingly an action about which Sparta says literally nothing in this case). *Sparta Ins. Co. v. Copper Solutions and Services, LLC*, No. 14-CV-67 (N.D. Tex., filed May 13, 2014). Sparta's complaint in that case sought much the same relief against Defendant Copper as its complaint seeks in the present action. In its federal suit in Texas, Sparta sought a declaratory judgment "that the combined limits of liability under the Policy for the Tractor and the Trailer totals $1,000,000 for the single occurrence which is the basis of the New Mexico lawsuit." In this federal suit, Sparta seeks "a judicial determination declaring that the Policy does not obligate Plaintiff Sparta to indemnify [the Copper Defendants] in excess of $1,000,000 for the claims at issue in the underlying lawsuit."

Notably, Sparta did not name Defendant Carrillo, Medina, or Alderete in its first federal suit for declaratory relief. But the docket in that case reflects that Alderete in his capacity as Copper Solutions' executive director—for reasons presently unclear—signed a waiver of service on behalf of Defendant Copper. When Copper failed to respond to the complaint, Sparta sought and obtained a default judgment against it. The Texas federal court's judgment of September 30, 2014, declares "that the subject policy unambiguously limits Sparta's liability to Copper Solutions to $1,000,000 per accident regardless of the number of covered autos. Sparta's liability to Copper Solutions for the New Mexico lawsuit cannot exceed a total of $1,000,000 in liability benefits."

Subsequently, in September 2016, a jury returned a verdict in favor of Carrillo in the Carrillo action. The jury awarded Carrillo $3,500,000 in compensatory damages and $9,000,000 in punitive damages against the Copper Defendants. Shortly thereafter, Carrillo filed a motion for pre-judgment interest under New Mexico state law. In a written order unfavorable to the three Copper Defendants (and Sparta), the state court awarded Carrillo prejudgment interest at the rate of 10% per year from May 1, 2014, for *unreasonable and untimely settlement offers*.

On April 11, 2017, Carrillo responded to the state court's order awarding him pre-judgment interest by filing a motion to supplement the complaint and join Sparta as a defendant in the Carrillo action. Therein Carillo alleged Sparta failed to make timely and reasonable settlement offers and willfully provided claims management services in an attempt to avoid paying on the policy, all contrary to the insurer's duty under New Mexico law. Two weeks later, Sparta moved to intervene in the Carrillo action to defend against Carrillo's allegations of the insurer's wrongdoing. The next day, April 28, 2017, the Copper Defendants filed a notice of appeal to the New Mexico Court of Appeals. As of this writing, the state trial court in San Miguel County has not ruled on Carrillo's and Sparta's post-judgment motions.[2]

---

[2] As a general rule, a notice of appeal in New Mexico deprives the trial court of jurisdiction, perhaps explaining why the state court has not ruled on the motions. In Sparta's response to the Copper Defendants' motion to dismiss, counsel tells this Court that the state court "summarily denied Carrillo's request" to supplement the complaint in the Carrillo action. Doc. 33, at 6. Counsel's claim constitutes a misrepresentation of the record.

On May 31, 2017, Plaintiff Sparta filed the present action for a declaratory judgment against the Copper Defendants pursuant to the federal Declaratory Judgment Act (DJA). Prior to answering Sparta's federal complaint, Defendants Copper and Alderete, on September 6, 2017, filed a separate action in Santa Fe County state court for bad faith in the proposed settlement of an insurance dispute. *Alderete v. Sparta Ins. Co.*, No. D-101-CV-201702532 (N.M. 1st Dist., Santa Fe Co., filed September 6, 2017) (Aldrete action). The complaint against Sparta, its adjustors and agents in the Aldrete action alleges breach of contract, breach of the covenant of good faith and fair dealing, negligence, and statutory violations of the New Mexico Insurance Practices Act and Unfair Trade Practices Act. The complaint also alleges negligence and legal malpractice against the lawyers Sparta retained to represent the Copper Defendants in the Carrillo action.

On September 25, 2017, the Copper Defendants responded to Plaintiff Sparta's *second* federal complaint for declaratory judgment by filing their motion to dismiss or in the alternative to stay the present proceeding pending the outcome of the insurance coverage dispute in state court. A month later, Defendant Carillo filed his own motion to dismiss or stay for substantially the same reasons set forth in the Copper Defendants' motion.

II.

The DJA provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (emphasis

5

added). Although the Court appears to have diversity jurisdiction over this action as presently constituted, the plain language of the DJA does not compel the Court to exercise that jurisdiction and adjudicate questions of state law. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). The Supreme Court has "repeatedly characterized the [DJA] as 'an enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). This is because "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.

*Brillhart* and *Wilton*, neither of which Plaintiff Sparta bothers to cite, are "the seminal cases dealing with discretion to dismiss or stay 'declaratory judgment actions.'"[3] *United States v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002). In those cases, the Supreme Court addressed the propriety of federal declaratory relief under the DJA where, like here, an insurer, anticipating a state court suit, sought a declaration in federal court of limited liability on an insurance policy. *Brillhart*, 316 U.S. at 493 (noting that when the insurer filed its federal

---

[3] Sparta tells the Court it should analyze Defendants' pending motions under either Fed. R. Civ. P. 12(b) or 56. Doc. 33, at 2–3. Sparta's argument is frivolous. The pending motions in no sense request judgment as a matter of law. Instead, the motions ask the Court to exercise its discretion in a particular manner. *See Wilton*, 515 U.S. at 281 (addressing the standard governing a district court's decision to stay a declaratory judgment action in favor of parallel state litigation).

declaratory judgment action, it was not yet a party to state proceedings); *Wilton*, 515 U.S. at 280 (noting the insurer filed its federal declaratory judgment action before the insured commenced its state action). In *Brillhart*, the Court asked "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in state court."[4] *Brillhart*, 316 U.S. at 495. The Supreme Court explained that the answer more often than not would turn on –

> the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amendable to process in that proceeding, etc.

*Id*. Importantly for present purposes, the Court opined:

---

[4] In its response to the Copper Defendants' motion to dismiss, Plaintiff Sparta says, "[i]t is important to understand that at the time that Sparta filed its [federal] complaint on May 31, 2017, there was no state proceeding to which Sparta was a party. . . . Under the New Mexico-adopted doctrine of priority jurisdiction, this Court—as the first to have jurisdiction over the controversy— has *priority* status that excludes or abates the second suit." Doc. 33, at 3–4 (emphasis in original). Both *Brillhart* and *Wilton*, as well as Tenth Circuit precedent, illustrate the fallacy of Sparta's argument that the Court's exercise of federal jurisdiction over this matter turns on a question of state law; namely who won the race to the courthouse? *See Mid-Continent Casualty Co. v. Village at Deer Creek Homeowners Assoc., Inc.*, 685 F.3d 977, 985 (10th Cir. 2012) (noting a first-to-file rule traditionally only applies in multiple actions brought in different courts of coordinate jurisdiction and equal rank). Of course, New Mexico's doctrine of priority jurisdiction *may* have some bearing on whether the state trial court in San Miguel or Santa Fe County ends up adjudicating the coverage controversy. But that is a matter for the New Mexico courts to address and decide.

7

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Id*. In view of these principles, the Court in <u>Brillhart</u> remanded for an assessment of movant's claim "that since another proceeding was pending in state court in which all matters in controversy between the parties could be fully adjudicated, a declaratory judgment in the federal court was unwarranted." *Id*.

Half a century later, the Supreme Court in <u>Wilton</u> reaffirmed "the <u>Brillhart</u> regime, under which district courts have substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings." <u>Wilton</u>, 515 U.S. at 286. In <u>Wilton</u>, the district court "observed that the state lawsuit pending . . . encompassed the same coverage issues raised in the declaratory judgment action and determined that a stay was warranted in order to avoid piecemeal litigation and to bar [the insurer's] attempts at forum shopping." *Id*. at 280. The Supreme Court explained, "<u>Brillhart</u>, without more, clearly supports the district court's decision in this case" to stay the federal action. *Id*. at 283. The Court recognized "[t]hat the [district] court here stayed, rather than dismissed, the action is of little moment in this regard, because the state court's decision will bind the parties under principles of res judicata." *Id*.

8

III.

In *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994), the Tenth Circuit set forth a list of inquiries this Court must consider in deciding whether to exercise jurisdiction over Sparta's declaratory judgment action: (1) whether Sparta's declaratory action would settle the controversy between the parties; (2) whether such action would serve a useful purpose in clarifying the legal relations at issue; (3) whether Sparta is using the declaratory remedy merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether Sparta's use of the declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether an alternative remedy exists that is better and more effective.[5]

In this case, application of the *Mhoon* factors against the backdrop of *Brillhart* and *Wilton* dictate the outcome. Faced with the San Miguel County state court's

---

[5] The circumstances here differ significantly from those presented in *Mhoon*. *Mhoon* held the district court properly exercised its discretion to adjudicate an insurance coverage dispute in the context of a declaratory judgment action. Unlike here:

> Neither party [in that case] suggested State Farm was, or could have been made, a party to the state court action, thus obviating any need for an independent declaratory action and providing a simpler and more efficient resolution of State Farm's obligations toward Mhoon. Indeed, both concede[d] that a suit like this one would have been required at some point in some case other than the state tort action.

*Mhoon*, 31 F.3d at 984.

order awarding Defendant Carrillo pre-judgment interest—an order containing unfavorable findings regarding Plaintiff Sparta's insurance practices—Sparta seeks refuge in federal court. What Sparta effectively seeks by way of its latest complaint for declaratory judgment is the adjudication of Defendants' bad faith insurance and related claims in federal court. Sparta does so by posing an anticipatory defense to those claims in its federal complaint, expecting to force Defendants' hand by way of compulsory counterclaims. *See St. Paul First and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (upholding dismissal of an insurer's declaratory judgment action where the issue in the federal action was identical to what would be a defense in the state court action).

Sparta tells the Court "the declaratory judgment action will settle [1] the question of whether . . . Sparta's liability limits were $1,000,000 [due to one accident/occurrence] or $2,000,000 [due to two insured vehicles involved, *i.e.*, the semi-truck and trailer]—and [2] the extent to which Sparta's offers prior to, during and after entry of judgment satisfied its obligations towards its insureds." Doc. 40, at 7. This Court has news for Sparta. In an action that was perhaps premature from Sparta's standpoint, *i.e.*, Defendant's allegations of Sparta's bad faith insurance practices had not yet come to fruition, a federal court in Texas declared *for what it's worth* that Sparta's liability to Copper Solutions "for the New Mexico lawsuit" is limited per the insurance policy's terms to $1,000,000. So what this case really appears to be about is Sparta's desire to have a second go around in federal court

10

in light of changed circumstances. This time Sparta wants a federal court to decide whether Sparta's conduct in response to the underlying auto accident satisfied its legal obligations to the insured Copper Defendants.

After all, Sparta says the issues of contract interpretation in Sparta's federal action "are fundamental to all questions of Sparta's *conduct* leading up to and following the entry of judgment in the Carrillo action." Doc. 33, at 8 (emphasis added). Unfortunately for Sparta, absolutely nothing prevents Sparta from raising issues of contract interpretation as a defense to Defendants' coverage claims in either pending New Mexico state court action. Plaintiff Sparta has never suggested that it is foreclosed from pressing any defenses it may have to Defendants' bad faith coverage claims in state court. And nothing prevents the New Mexico state courts from addressing those defenses, whether based in contract or otherwise, in resolving *all* matters in controversy between *all* interested parties. *See City of Las Cruces*, 289 F.3d at 1182 (observing that state and federal proceedings are sufficiently parallel if substantially the same parties litigate substantially the same issues).

One need only read the relevant filings in the San Miguel County state action, in particular Sparta's motion to intervene for the purpose of objecting to Carrillo's motion to file a supplemental complaint and its insureds' response in opposition to Carrillo's motion to award pre-judgment interest, to understand Sparta is raising the very same issues in this case as it does in state court. *See Mid Continent Casualty Co.*, 685 F.3d at 982 n.3 ("Especially relevant may be whether the state court action

11

would necessarily resolve the issues in the declaratory judgment action."). The Court has no choice but to conclude Sparta filed the present action in an effort to avoid adjudication of Defendants' claims against it in New Mexico state court. Procedural fencing is what Sparta is up to, plain and simple.

The insurance coverage controversy Sparta presents to this Court is part and parcel of the bad faith insurance claims it now faces in state court. If Sparta breached its lawful duties to Defendants under state law, the coverage issue as defined exclusively by the four corners of the contract falls by the wayside.[6] The tort claims that Defendants now pursue against Sparta in state court will in all likelihood conclusively resolve the question of insurance coverage under the insurance contract. Accordingly, the Court concludes the claims Sparta raises in its federal complaint for declaratory judgment are duplicative of the defenses it may raise in state court. Consequently, Sparta's declaratory judgment action would serve no useful purpose in clarifying the legal relations at issue, and constitutes procedural posturing, *i.e.*, forum shopping. Moreover, because Sparta has an adequate process in state court, a decision by this Court to exercise jurisdiction would encroach upon state jurisdiction and do nothing to further federal-state relations.

---

[6] Some controversy exists as to whether Texas and New Mexico state law governs the interpretation of the insurance contract. Regardless, the New Mexico state courts are quite capable of applying the appropriate choice of law rules. *See Mid-Continent Casualty*, 685 F.3d at 986.

Accordingly, the Copper Defendants' and Defendant Carrillo's motions (Docs. 18, 35) to dismiss Plaintiff Sparta's Complaint for Declaratory Judgment are GRANTED. Plaintiff Sparta's complaint shall be dismissed WITHOUT PREJUDICE pending adjudication of the insurance coverage issue in New Mexico state court. In the unlikely event that *neither* of the pending state court actions upon completion resolves the coverage controversy, Sparta may move, upon good cause shown, for leave to reinstate its federal complaint within thirty (30) days of the conclusion of all state court proceedings.

A separate judgment shall enter pursuant to Fed. R. Civ. P. 58.

Entered for the Court
this 20th day of November, 2017


Bobby R. Baldock
United States Circuit Judge
Sitting by Designation